Matthias, J.
 

 The only question at issue in this case is whether the property known and referred to as The Cunningham Sanitarium falls within the class of property authorized by Section 2, Article XII of the Constitution, to be exempted from taxation. Is it an institution “used exclusively for charitable purposes”? Pursuant to such constitutional authority, Section 5353, General Code, was enacted and it was thus provided that
 
 “* * *
 
 property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation.” There is no presumption favorable to exemption from taxation. On the contrary, the right to such exemption must be shown “indubitably to exist.”
 
 Lee, Treas.,
 
 v.
 
 Sturges,
 
 46 Ohio St., 153, 19 N. E., 560, 2 L. R. A., 556;
 
 Benjamin Rose Institute
 
 v.
 
 Myers, Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A. 1916D, 1170. Moreover, the exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by
 
 *101
 
 the Constitution.
 
 Wilson, Aud.,
 
 v.
 
 Licking Aerie,
 
 104 Ohio St., 137, 135 N. E., 545;
 
 State, ex rel. Boss,
 
 v.
 
 Hess, Aud.,
 
 113 Ohio St., 52, 148 N. E., 347.
 

 The record before us discloses that in 1928 The Cunningham Sanitarium structure was erected on Lake Shore Boulevard in Cleveland. It consisted of a large bowl or sphere where the outstanding feature of the treatment of patients was the application of oxygen in various diseases. The institution was organized as a corporation for profit axid continued operating as such until about 1932, when a new company, a corporation not for profit, was organized. At that time a $500,000 purchase money mortgage was executed, there being a trust agreement with the Cleveland Trust Company. $375,000 of this mortgage was allocated to The Imperial Investment Company and $125,000 to a Mr. Cunningham who had been the originator of the plan and project. It appears that The Imperial Investment Company was a holding company for the Timken interests which had in the main supplied the funds for the erection of the sanitarium. In 1934 the Ohio Institute of Oxygen Therapy, a corporation for profit, was organized, which took over the three-fourths mortgage interest of The Imperial Investment Company upon an agreed price of $300,000, paying then and since approximately $60,000. The man who is vice-president, acting president and trustee of The Cunningham Sanitarium is also the president and apparently the promoter of the Ohio Institute of Oxygen Therapy. When in Cleveland, he resides at The Cunningham Sanitarium. Shortly after its incorporation, the Ohio Institute of Oxygen Therapy entered upon the sale of stock at $850 per share, the face value of the shares being $1,000, and realized approximately $190,000 from the sale of such stock. A considerable portion of the proceeds of these sales was used for the maintenance of the sanitarium, which does not appear to have been conducted any differently than when it
 
 *102
 
 was a corporation for profit. The failure to make a profit, however, does not convert a business into a charitable institution.
 

 It is disclosed by the record that, though some of the patients admitted to the sanitarium did not pay for' the treatment received, one purpose, if not the principal purpose of the plan heretofore referred to was to use The Cunningham Sanitarium to promote the sale of stock and the establishment and erection of similar bowls elsewhere throughout the country. The Cunningham Sanitarium was thereby made the beneficiary of a part of the proceeds of the sale of stock with the very apparent purpose of using it not for the purpose of making money directly out of that institution itself, but rather from the erection of similar bowls in various parts of the country. This indicates a use not exclusively for charitable purposes. Where use is a criterion of exemption of property from taxation, the exemption is lost if the property is appropriated to other uses.
 
 Bistline
 
 v.
 
 Bassett et al., Bd. of Equalization,
 
 47 Idaho, 66, 272 P., 696.
 

 Prom this record we conclude that the Court of Appeals was in error in its conclusion that there was no evidence before the Court of Common Pleas to support the conclusion that The Cunningham Sanitarium, during the year 1935, was not used exclusively for charitable purposes. The two judges of the Court of Appeals, therefore, were in error in reversing and rendering final judgment in favor of The Cunningham Sanitarium.
 

 Counsel for appellee are in error in their insistence that clear and convincing evidence was essential before the Court of Common Pleas could reverse the finding and order of the Tax Commission. Section 5611-2, G-eneral Code, which deals with the procedure where ‘ the Tax Commission passes upon valuation or liability of property for taxation, requires clear and convincing evidence only to reverse the determination of the Tax
 
 *103
 
 Commission as to the
 
 value of property.
 
 The language of the section is quite clear in this respect when it specifies that “No determination of the Tax Commission as to the
 
 value of property for taxation
 
 shall be reversed * * * unless it is shown by clear and convincing evidence that the
 
 value of the property,
 
 as determined by the Tax Commission, is not the
 
 true value
 
 in money of such property.” (Italics ours.)
 

 It is stated by this court in the syllabus in the case of
 
 Stanton, Pros. Atty.,
 
 v.
 
 Frankel Bros. Realty Co., 117
 
 Ohio St., 345, 158 N. E., 868, that “Upon a petition in error being filed in the Court of Common Pleas from the Tax Commission of Ohio, it is the duty of the court to review the entire record made before the Tax Commission and to exercise an independent judgment upon all the issues both of law and fact determined by the Tax Commission.”
 

 It is not deemed necessary to discuss or consider the question of the virtue of the treatment administered or whether any service is rendered in the promotion or advancement of medical science. Our only question is whether there was evidence before the trial court to support its conclusions that the property in question was not used exclusively for charitable purposes. For the reasons stated the judgment of the Court of Appeals is reversed and that of the Common Pleas Court is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myers and Gorman, JJ., concur.