Matthias, J.,
dissenting. The reasons for my dissent may be very briefly stated.
The phrase, “institutions used exclusively for charitable purposes,” in Section 2 of Article XII of the Constitution of this state, has for over a period of 40 years been consistently held by this court to be the *203 prescribed standard with which an applicant for tax exemption must conform to secure such exemption. The cases cited in the majority opinion are only a few of the cases establishing that precedent.
Pursuant to that limited authority, the General Assembly, in Section 5353, General Code, has provided for such exemption, and such exemption “must be clearly and expressly stated in the statute and must be such only as * * * the Constitution authorizes to be exempted.” Wilson, Aud., v. Licking Aerie, 104 Ohio St., 137, 135 N. E., 545; Cullitan, Pros. Atty., v. Cunningham Sanitarium, 134 Ohio St., 99, 16 N. E. (2d), 205.
The decision in these cases ignores the long established precedent and adopts a new standard which is in itself vague, varying and uncertain. Under the proposed new standard, renting rooms to transients or permanent occupants in competition with taxpaying owners of real property and operating restaurants, bowling alleys and like facilities, which are patronized by the general public and for the use of which a charge is made, also in competition with similar businesses are held to be “only incidental” to social, religious and educational purposes, even though from 20 to 45 per cent of the cubic content of the buildings, exemption of which is sought, is devoted to such nonexempt purposes. In one of the instant cases the income for a ten-month period from such so-called incidental uses was in the year 1950 $204,539.68. Such were the findings of the Board of Tax Appeals. The majority of this court now holds that the property involved herein was used “exclusively for charitable purposes.”
The wisdom of the people of this state in adopting Section 2 of Article XII of the Constitution is demonstrated by the results which will naturally flow from the majority decision of the cases now under considera *204 tion. Each year the county auditor will be required to investigate each institution in his county claiming exemption; he will necessarily determine whether it has an “overall program of social, religious and educational” service; he will necessarily determine whether the extent and nature of its commercial enterprises are such as to make them only “incidental”; he must determine whether the proceeds thereof are in fact devoted to its adopted program; and in accordance with his findings grant or reject such application for tax exemption. Those claiming exemption need no longer show that the property is “used exclusively for charitable purposes,” but only that such is its mam objective.
The Board of Tax Appeals may review such action of the county auditor with the same lack of any fixed standard and, upon hearing, affirm, reverse or modify the action of the county auditor.
In that situation, an appeal may be had to this court for its determination of the question whether the decision of the Board of Tax Appeals is unlawful or unreasonable.
Courts are not authorized to adopt or amend constitutions or enact statutes. If a new and different standard for tax exemption is to be established and the word, “exclusively,” is to be eliminated from-the Constitution, that should be accomplished by the process of amendment of the Constitution, which is beyond the province of this court.